**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jorge A. Espinoza, | No. CV- 17-02370-PHX-JAT (JZB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Attorney General of Arizona, et al., | |
| Respondents. | |

TO THE HONORABLE JAMES A. TEILBORG, SENIOR UNITED STATES DISTRICT JUDGE:

Petitioner Jorge A. Espinoza has filed a pro se Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 8.)

**I.      Summary of Conclusion.**

Petitioner raises four grounds for relief in his timely Petition. Petitioner alleges juror bias, ineffective assistance of counsel, and insufficient evidence to sustain his convictions. Petitioner's claims are meritless. Therefore, the Court will recommend that the Petition be denied and dismissed with prejudice.

**II.     Background.**

**A.     Facts of the Crimes.**

The Arizona Court of Appeals found:

> Around 4:30 p.m. on May 6, 2013, Espinoza began his shift as a commercial truck driver hauling petroleum products. After completing a pre-trip inspection of the tanker truck, he began driving from Yuma to Phoenix. At the same time, emergency personnel and various officers with the Arizona

Department of Public Safety (DPS) responded to an unrelated single-vehicle rollover accident on eastbound Interstate 8 outside of Yuma.

At the accident scene, Officer Tim Huffman reported to Captain Anderson that a teenage girl was texting on her cell phone when she rear-ended another vehicle, causing her to lose control and roll over onto the shoulder. The local fire department had arrived to provide emergency assistance. The girl was airlifted to the hospital, and Huffman asked Anderson to block the far right lane of travel so the occupants of the other involved vehicle could be safely loaded into the waiting ambulance.

Captain Anderson backed up his patrol vehicle approximately one hundred and fifty feet, parked diagonally across the outside lane with his emergency lights activated, and, wearing his DPS-issued reflective vest, manually directed drivers to merge left, away from the accident scene. Officer Simpson stood in the outside lane farther down the highway to prevent motorists from moving back into the right lane too soon. By this time, several vehicles driven by individuals working at the accident scene were lined up on the shoulder of the highway, including one involved in the original accident, plus an ambulance, a fire truck, three DPS patrol vehicles, and the ambulance company chief's personal pick-up truck, all of which were equipped with and operating their emergency lights.

It was a clear day, and traffic was complying with Captain Anderson's direction to merge left. After a few minutes, Anderson and Officer Simpson observed a commercial tanker truck approaching the accident scene in the outside lane. When the driver did not respond to Anderson's direction to merge left, Anderson became frantic, "jumping up and down and waiving [his] arms trying to get [the driver's] attention." At some point, Anderson realized the truck driver could not respond in time to avoid a collision and ran off the road just in time to avoid being hit. Both Anderson and Simpson testified the driver never looked up, never slowed down, and never took any evasive action.

Immediately thereafter, there was a "tremendous explosion … like a train, a freight train came through there" as the twelve-ton tanker truck, still traveling sixty-five miles per hour, collided first with Captain Anderson's patrol vehicle and then with Officer Huffman's patrol vehicle. Officer Simpson, as well as emergency medical personnel on scene, including Barry A., John N., Cody P., and Donald P., all testified they heard the noise and watched as the truck skidded sideways toward them, jackknifed, and crushed the pick-up truck and Simpson's patrol vehicle into the fire truck, throwing up a cloud of dust and debris. Anderson quickly discovered Huffman in his patrol vehicle — now an unrecognizable "mangled ball of metal" — gasping for breath and crushed against the dashboard. Huffman died from blunt force trauma and internal injuries before he could be extricated from the vehicle. The tanker truck contained volatile gasoline fumes, and the scene was closed for more than six hours while the hazmat team worked to evaluate and eliminate the attendant dangers before further investigation took place.

*State v. Espinoza*, 2016 WL 3264113, at *1 (Ariz. Ct. App. 2016).[1]

---

[1] The Arizona Court of Appeals summarized additional facts that are not included here. *See* Doc. 8, Ex. C, at 15-18.

## B. Jury Trial and Sentencing.

After a jury trial, Petitioner was convicted of Negligent Homicide, six counts of Endangerment, and six counts of Criminal Damage. (Doc. 17-1, Ex. C, at 24-25.) The court sentenced Petitioner to 6 years of imprisonment. *Espinoza*, 2016 WL 3264113, at *3.

## C. Direct Appeal.

On June 14, 2016, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. (Doc. 8, Ex. C, at 15-18.)

## D. Petitioner's Post-Conviction Relief Proceeding.

Petitioner did not initiate post-conviction review proceedings. (Doc. 8 at 3.)

## E. Petitioner's Federal Habeas Petition.

On July 17, 2017, Petitioner filed a Petition. (Doc. 1.) On August 25, 2017, Petitioner filed Arguments in support of the Petition. (Doc. 3.) On October 26, 2018, the Court dismissed the Petition because "Petitioner has not named his custodian as Respondent." (Doc. 6 at 2.) The Court dismissed the Petition without prejudice, giving Petitioner the "opportunity to amend his Petition to name a proper Respondent." (*Id.*)

On November 20, 2017, Petitioner timely filed an Amended habeas Petition, raising four claims. (Doc. 1.) The Court has summarized these claims as follows:

> (1) Petitioner's Fifth and Fourteenth Amendment rights were violated when the trial court failed to remove jurors 5, 6, and 14, who had personal connections to the prosecutor and judge;
>
> (2) Petitioner's Fifth and Fourteenth Amendment rights were violated when the trial court failed to remove jurors 1, 2, 3, 10, 14, 16, and 18 for exposure to media coverage;
>
> (3) Petitioner received ineffective assistance of counsel, in violation of the Sixth Amendment; and
>
> (4) There was insufficient evidence of criminal intent to support Petitioner's conviction, in violation of the Fifth and Fourteenth Amendments.

(Doc. 10 at 1-2.) On May 2, 2018, Respondents filed a Limited Response. (Doc. 17.) On July 2, 2018, Petitioner filed a Reply. (Doc. 20.)

## III. Procedural Default.

### A. Exhaustion.

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless a petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim").

A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which his claim is based. *See id.* at 33. A "state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 31-32. Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum . . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

**B.    Merits.**

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision which was contrary to clearly established federal law, or the state court decision was an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d); *Davis v. Ayala*, 135 S.Ct. 2187, 2198-99 (2015); *Musladin v. Lamarque*, 555 F.3d 834, 838 (9th Cir. 2009). The AEDPA requires that the habeas court review the "last reasoned decision" from the state court, "which means that when the final state court decision contains no reasoning, we may look to the last decision from the state court that provides a reasoned explanation of the issue." *Murray v. Schriro*, 746 F.3d 418, 441 (9th Cir. 2014) (quoting *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000)).

> Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.

*White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal citations and quotations omitted).

*See also Arrendondo v. Neven*, 763 F.3d 1122, 1133-34 (9th Cir. 2014).

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fair minded disagreement." *Harrington v. Richter*, [] 131 S.Ct. 770, 786–787, [] (2011). "If this standard is difficult to meet"—and it is—"that is because it was meant to be." [] 131 S.Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at ——, 131 S.Ct., at 786 (internal quotation marks omitted).

*Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013).

Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." *Sumner v. Mata*, 455 U.S. 591, 593 (1982). *See also Phillips v. Ornoski*, 673 F.3d 1168, 1202 n.13 (9th Cir. 2012).

**IV. Ground One.**

Petitioner alleges the "judgment resulted from the trial court failing to remove Jurors 5, 6, and 14 thereby violating my federal constitutional due process rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution." (Doc. 8 at 6.)

Petitioner argues that these jurors should have been excused because they personally knew the prosecutor, a police officer, or the judge. (*Id.*)

Petitioner raised this claim in the state courts.[2] The Arizona Court of Appeals found:

> During jury selection, Juror 5 stated she used to babysit one of the investigating officers when he was young because their mothers were good friends, but now "rarely ha[s] contact with him." She added that she last saw the officer two years ago at her mother's funeral and would not give greater weight to his testimony simply because she knew him. To the contrary, Juror 5 stated she "would be very objective." She also stated she "believe[d a defendant is] innocent until found guilty."
>
> Juror 6 stated she knew the prosecutor and Officer Simmons because their children had played on sports teams together in the past. Juror 6 also knew the prosecutor's son when he was in fifth grade twelve or thirteen years prior to the trial and was currently a member of a weight loss club with Simmons. When questioned, Juror 6 expressed her belief she could be a fair and impartial juror.
>
> The trial court judge acknowledged he knew Juror 14 "quite well" because the two refereed basketball games together—games which the prosecutor had "probably" attended. Neither the judge nor the prosecutor indicated this prior contact created a conflict. And, Juror 14 testified he would be able to make a decision based only upon the evidence presented during trial as an impartial juror.
>
> . . .
>
> Given the attenuated connections between the jurors and the trial participants and the jurors' assurances they would be fair and impartial, the trial court did not abuse its discretion in determining the circumstances did not warrant dismissal from jury service.

*Espinoza*, 2016 WL 3264113, at *5.

"The Sixth Amendment guarantees criminal defendants a verdict by impartial, indifferent jurors. The bias or prejudice of even a single juror would violate [the] right to a

---

[2] Respondent asserts Petitioner's claims in Grounds One and Two are unexhausted and procedurally defaulted because Petitioner now raises a Fifth Amendment claim, when he raised a Sixth Amendment claim in the state courts. Petitioner cited to the Fifth Amendment in his supplemental briefing to the Arizona Court of Appeals. (Doc. 17-1, Ex. K, at 87.) Petitioner also cited to the Fourteenth Amendment. (*Id.* at 101.) Because Petitioner raises the same factual assertions here, the Court would otherwise review these claims under 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). The Court liberally construes the Petition, and addresses Petitioner's claim that his "due process rights" were violated.

fair trial." *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998) (en banc) (citing *United States v. Hendrix*, 549 F.2d 1225, 1227 (9th Cir. 1977)). Accordingly, "[e]ven if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to an impartial jury." *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir. 1979) (internal quotation marks omitted). Courts have "analyzed juror bias under two theories—actual bias and implied bias." *Estrada v. Scribner*, 512 F.3d 1227, 1240 (9th Cir. 2008). "Also referred to as "bias in fact," actual bias is the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *United States v. Kechedzian*, 2018 WL 4200969, at *3 (9th Cir. 2018) (citation omitted). To merit a new trial, Petitioner must show that a juror "failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *United States v. Henley*, 238 F.3d 1111, 1121(9th Cir. 2001). "The Supreme Court has clearly established that the determination of a juror's partiality or bias is a factual determination to which section 2254(d)'s presumption of correctness applies." *Austad v. Risley*, 761 F.2d 1348, 1350 (9th Cir. 1985). Petitioner bears the burden to rebut the trial court's factual finding of juror bias "by clear and convincing evidence." *Burt,* 571 U.S. at 18; 28 U.S.C. § 2254(e) (1).

Here, Petitioner fails to establish how the trial court's ruling regarding these jurors was unreasonable. Petitioner does not argue the facts of the case or refer to the juror's answers in his Petition. Regarding Juror 5, Petitioner states that "she used to babysit [for] one of the investigating officer when he was young because their mothers were good friends." (Doc. 8 at 6.) Petitioner offers no evidence to contradict the court's finding that the juror could be fair and impartial. Also, a presumption of impartiality applies if jurors provide assurances that they can "lay aside [their] impression or opinion and render a verdict based on the evidence presented in court." *Murphy v. Florida*, 421 U.S. 794, 800, (1975) (quotation omitted). "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible

standard." *Irvin v. Dowd*, 366 U.S. 717, 723 (1961). The presumption is overcome only "by demonstrating that the juror actually held a biased opinion." *Ybarra v. McDaniel*, 656 F.3d 984, 992 (9th Cir. 2011). Similarly, Petitioner's allegation of bias against Juror 6 is insufficient. Petitioner argues that Juror 6 "knew the prosecutor and Officer Simmons because their children had played in sports teams together" and Officer Simmons was in the same "weight class" as Juror 6. (Doc. 8 at 6.) Petitioner offers nothing to contradict the state court determination that Juror 6 could be fair and impartial. Petitioner offers no argument to explain why Juror 14 knowing the judge would make the juror biased, or establish that the state court's ruling was factually incorrect by clear and convincing evidence. *See also Tinsley v. Borg*, 895 F.2d 520, 528-29 (9th Cir. 1990) (citing cases where "courts have declined to find implied bias when a juror was personally acquainted with a witness provided no actual bias existed.").[3] For these reasons, the Court finds that the Arizona Court of Appeal's determination that Jurors No. 5, 6, and 14 were not biased was not an unreasonable application of clearly established law, and is fully supported by the record. Therefore, Petitioner is not entitled to habeas relief on this claim.

**V.  Ground Two.**

Petitioner alleges the "judgment resulted from the trial court failing to remove jurors 1, 2, 3, 10, 14, 16, and 18 for exposure to media coverage in violation of my federal constitutional due process rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution." (Doc. 8 at 7.) He asserts that these jurors "reported seeing news reports and/or video clips of the collision on television, in the newspaper, or on Facebook." (*Id*.)

---

[3] Petitioner's implied bias also fails because there is no clearly established federal law regarding implied bias, and thus habeas relief is not available. *See Hedlund v. Ryan*, 854 F.3d 557, 575 (9th Cir. 2017) ("There is no clearly established federal law regarding the issue of implied bias.).

- 8 -

Petitioner raised this claim in his direct appeal. (Doc. 17-1, Ex. K, at 90-94.) The Arizona Court of Appeals found:

> Although Jurors 1, 2, 3, 10, 16, and 18 reported seeing news reports and/or video clips of the collision on the television, in the newspaper, or on Facebook, none recalled the story with any particular detail. Additionally, none of these jurors discussed or heard any editorial comments regarding the case or the cause of the collision or formed any opinions about what had happened. Juror 14 testified that, when the collision first occurred, he had discussed the case at some length with his friends "trying to hash out how it could happen." Despite these discussions, Juror 14 assured the trial court he did not form any definite opinions about what had happened, and he would be able to make a decision based only upon the evidence presented during trial. The other jurors likewise agreed they had "no reservations" regarding their ability to serve as fair and impartial jurors.
>
> . . .
>
> Our review of the record reveals the trial court acted within its discretion in concluding each of the challenged jurors would be able to lay aside prior impressions or opinions, if indeed he actually had any, render a verdict based solely upon the evidence presented in court, and act fairly and impartially. *See State v. Reasoner*, 154 Ariz. 377, 384 (App. 1987) (holding the trial court does not err in refusing to strike a juror for cause "when he ultimately assures the court that he can be objective") (citing *State v. Davis*, 137 Ariz. 551, 558 (App. 1983)). Moreover, the jurors were instructed to consider only the evidence presented and to use their common sense in determining Espinoza's guilt or innocence, and we presume they did as instructed. *State v. Peraza*, 239 Ariz. 140, 146, ¶ 23 (App. 2016) (citing *State v. Newell*, 212 Ariz. 389, 404, ¶ 68 (2006)). We therefore find no error, fundamental or otherwise.

*Espinoza*, 2016 WL 3264113, at *5.

As noted above, this Court must give deference to the trial court findings on juror bias. *See also Skilling v. United States*, 561 U.S. 358, 396 (2010) ("In reviewing claims [of juror bias], the deference due to district courts is at its pinnacle: 'A trial court's findings of juror impartiality may be overturned only for manifest error'" (quoting *Mu'Min v. Virginia*, 500 U.S. 415, 428 (1991) (finding no due process violation where eight trial jurors viewed pretrial publicity but stated that knowledge would not affect their ability to fair and impartial)); *Passmore v. O'Fallon*, 722 Fed. App'x. 703, 704 (9th Cir. 2018) (denying habeas relief because "[t]here is no evidence that [the juror] was unable to put aside her initial impression and "render a verdict based on the evidence presented").

Here, the trial court found that each of the trial jurors could be fair and impartial. The Arizona Court of Appeals found no error in that ruling. Petitioner fails to argue or establish that this determination was incorrect. Juror 1 (Atalig) reported that she had seen a news report of the collision and a video of the inside of Espinoza's truck at the time of the collision. (Doc. 17-3, Exh. O, at 110.) The juror was extensively questioned by the court and counsel. (*Id*. at 109-117.) Juror 1 had "no reservations" about being fair and impartial. (*Id*. at 111.) Juror 2 (Rausch) reported that she had seen a "posting" on Facebook regarding the collision but did not remember "any details of the story." (Doc. 17-4, Ex. P, at 56.) Juror 2 had no reservations about being fair and impartial. (*Id*. at 58.) Juror 3 (Estrada) reported that he had seen on the news "a grainy video of the defendant's face in a downward glance, and it looked like he was driving. And then as soon as I realized that, I turned it off." (Doc. 17-5, Ex. P, at 74.) Juror 3 had no questions about his ability to be fair and impartial. (*Id*. at 75.) Juror 10 (Reyes) stated that he saw a news story that the defendant was "using his cell phone at the time of impact." (Doc. 17-4, Ex. P, at 77.) Juror 10 also stated that "the news really doesn't – I mean, you can't go by what they say, as the judge was saying." (*Id*. at 79-80.) He agreed he would "decide the facts in the case and do it only from evidence that's presented at trial." (*Id*. at 86.) Juror 14 (Sosinski) reported that he had seen a news video that "did show the driver driving and the accident occurring, and that's basically all I really remember of what I remember seeing." (Doc. 17-4, Ex. P, at 128.) He stated he did not form "any" opinions about what happened (*id*. at 129) and would base his decision only on the "information and the evidence" from trial (*id*. at 140). Juror 16 (Campbell) stated that she saw TV newscast where "a DPS officer was hit" but she did not "remember a lot about it." (Doc. 17-5, Ex. P, at 66.) Juror 16 had no doubts about her ability to be fair. (*Id*. at 67.) Juror 18 (Martinez) reported that she had read a newspaper story that "there was an accident, that someone hit a police officer." (Doc. 17-6, Ex. Q, at 60.) Juror 18 recalled no other details. (*Id*.)

The trial court conducted thorough, separate interviews with each of the prospective jurors. The court's findings are presumably correct. *See Dyer*, 151 F.3d at 975 ("So long

as the fact-finding process is objective and reasonably explores the issues presented, the state trial judge's findings based on that investigation are entitled to a presumption of correctness."). Petitioner presents no evidence or argument to undermine the trial court's findings. Petitioner's claim in Ground Two fails.

## VI. Ground Three.

Petitioner alleges counsel provided ineffective assistance by failing to object to the inclusion of Jurors 1, 10, and 14 on the jury panel. (Doc. 8 at 8.) Petitioner did not raise this claim in the Arizona courts, so his claim is unexhausted and procedurally defaulted without excuse. Petitioner's claim also fails on the merits.[4] Claims of ineffective assistance of counsel are governed by the principles set forth in *Strickland v. Washington*, 466 U.S. 668, 684 (1984). To prevail under *Strickland*, a petitioner must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficiency prejudiced the defense. *Id.* at 687-88. A petitioner must affirmatively prove prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Federal courts may review procedurally defaulted claims if the petitioner alleges and proves cause for the default and actual prejudice as a result of the alleged violation of federal law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The Court reviewed Petitioner's allegations in Grounds One and Two. Petitioner fails to identify how counsel failed to adequately question the jurors or what additional arguments counsel should have presented to the Court. Petitioner fails to argue how the Arizona Court of Appeal's decisions regarding juror bias were an unreasonable application of clearly established federal law. Petitioner thus fails to establish that his ineffective-assistance-of-trial-counsel claim has merit.

## VII. Ground Four.

---

[4] Under 28 U.S.C. § 2254(b)(2), the Court may deny an unexhausted claim on the merits "when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).

Petitioner asserts there "was no sufficient evidence in my case to convict me with criminal intent to commit the offenses" in violation of the Fifth and Fourteenth Amendments. (Doc. 1 at 9.) He argues that the "collision occurred because law enforcement and emergency medical personnel did not take appropriate steps to control traffic around the original accident scene before the second accident involving Petitioner." (*Id.*) The Arizona Court of Appeals found:

> As relevant here, "[a] person commits negligent homicide if with criminal negligence the person causes the death of another person." A.R.S. § 13–1102(A). Criminal negligence occurs in this context when "a person fails to perceive a substantial and unjustifiable risk" of death. *See* A.R.S. § 13–105(10)(d). "A person commits endangerment by recklessly endangering another person with a substantial risk of imminent death or physical injury." A.R.S. § 13–1201(A). And, criminal damage occurs when a person "[r]ecklessly defac[es] or damag[es] property of another person." A.R.S. § 13–1602(A)(1). "Recklessly" means "a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur." A.R.S. § 13–105(10)(c).
>
> Here, evidence was presented upon which the jury could determine beyond a reasonable doubt that Espinoza was an experienced, commercial truck driver who received extensive safety training regarding the general dangers of driving, as well as the specific dangers of hauling petroleum products, and that he disregarded the risk of catastrophic injury to persons or property when he used his cell phone while driving a tanker truck sixty-five miles per hour on the highway. As a result of this conduct, he caused the death of Officer Huffman, caused almost two hundred thousand dollars of property damage, and put everyone at the accident scene at risk of injury or death. Although Espinoza presented evidence to support his defenses, the resolution of conflicts is solely within the province of the jury. Sufficient evidence supports Espinoza's convictions, and we find no error.

*Espinoza*, 2016 WL 3264113, at \*6.

"To prevail on an insufficiency of evidence claim, a habeas petitioner must show that 'upon the record evidence adduced at the trial[,] no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *Briceno v. Scribner*, 555 F.3d 1069, 1078 (9th Cir. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (alteration in original)). "The government is entitled to all reasonable inferences that might be drawn from the evidence." *United States v. Johnson*, 804 F.2d 1078, 1083 (9th Cir. 1986). Because the Antiterrorism and Effective Death Penalty Act ("AEDPA") applies to this

petition, "we owe a 'double dose of deference'" to the state court's judgment. *Long v. Johnson*, 736 F.3d 891, 896 (9th Cir. 2013) (citation omitted).

Here, Petitioner does not discuss the decision of the Arizona Court of Appeals. He does not argue how the decision was contrary to, or involved an unreasonable application of, clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. The court wrote that Petitioner "disregarded the risk of catastrophic injury to persons or property when he used his cell phone while driving a tanker truck sixty-five miles per hour on the highway." *Espinoza*, 2016 WL 3264113, at *6. Petitioner does not contest this finding, but instead argues that law enforcement "did not take appropriate steps to control traffic around the original accident scene." (Doc. 8 at 9.) He asserts that "there were inconsistencies in the evidence regarding other traffic on the highway at the time of the collision." (*Id.*) Arizona Department of Public Safety Officer George Anderson testified that other vehicles "were moving over much sooner than even I anticipated because the visibility was so present that they were able to see me and then move over immediately." (Doc. 17-6, Ex. R, at 169.) He testified that visibility was "clear" (*id*. at 170) and he could see Petitioner's truck from "about a half mile to three-quarters of a mile away, at least" (*id*. at 171). Officer Anderson testified that he was "jumping up and down waiving my arms trying to get his attention." (*Id.* at 173.) He stated that the Petitioner did not slow or take any evasive action prior to the collision. (*Id*. at 175.) Contrary to Petitioner's claim, other motorists had no difficulty slowing down in response to the flashing lights, emergency vehicles, and police officers directing traffic. Petitioner's cursory allegation fails.

## CONCLUSION

The record is sufficiently developed and the Court does not find that an evidentiary hearing is necessary for resolution of this matter. *See Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011). Based on the above analysis, the Court finds that Petitioner's claims are timely, but procedurally defaulted. The Court will therefore recommend that the Petition for Writ of Habeas Corpus (doc. 8) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

Dated this 28th day of September, 2018.

Honorable John Z. Boyle
United States Magistrate Judge